**COMMERCIAL UNION LIFE INS. CO. v. MOORE.**

**No. 11107.**

Court of Civil Appeals of Texas.
San Antonio.

Feb. 18, 1942.

Richey, Sheehy & Teeling, of Waco, and Davenport & Ransome, of Brownsville, for appellant.

Carter & Stiernberg, of Harlingen, for appellee.

NORVELL, Justice.

This is an appeal from an order overruling the plea of privilege of Commercial Union Life Insurance Company, the defendant below.

The action is one for damages brought by appellee, Asa H. Moore, for alleged slanderous statements made by one George C. Riha, said to be the agent of appellant.

Appellee relied upon exception 29 of Article 1995, Vernon's Annotated Civil Statutes. It was therefore necessary to establish as a venue fact that a cause of

action for slander accrued. A. H. Belo Corporation v. Blanton, 133 Tex. 391, 129 S.W.2d 619. It was also necessary for appellee to prove that the allegedly slanderous words were uttered by Riha while acting in the course of his employment as the agent of appellant. Brown Express, Inc., v. Arnold, Tex.Com.App., 157 S.W.2d 138. The trial court presumedly held that the statements of Riha complained of were uttered by Riha while acting in the course of his employment, and the controlling question upon this appeal is whether or not there is evidence in the record supporting this presumed finding. There is no dispute concerning the slanderous nature of the statements.

It appears that appellant had been defrauded by means of false claims of liability under its policies by persons living in the vicinity of La Feria, Texas. One of the parties involved in these fraudulent transactions was a woman named Guadalupe Gonzales, who had been arrested and charged with the commission of a penal offense in connection with a claim under one of appellant's policies.

The appellee notified appellant by letter that it had paid out money on claims under its policies when in truth and in fact the supposedly deceased persons were actually alive.

The president of the insurance company sent Riha to La Feria for the purpose of investigating the matter. Riha then lived at Carrizo Springs, Texas, but had formerly lived in La Feria for a number of years.

Riha had certain conversations with Moore, who was Mayor of La Feria, and appears for a time to have been employed by the insurance company, as an attorney at law, in connection with the frauds practiced upon it.

Several persons were arrested in connection with the fraudulent insurance claims and some newspaper publicity given to said arrests and progress of the investigation relating thereto. On October 12th, the Harlingen Morning Star published a news story relating to these matters under the following headlines:

"Valley Insurance Racket Smashed: 2 Persons 'Resurrected' From Dead:"

"Prominent Valleyites Are Expected to be Involved as Postal Men Take Over."

"Sensational Disclosures Hinted as Man, Woman Charged Here to Date."

Appellee's name was not mentioned in the newspaper article, but after the issue of the paper above referred to had been circulated in and about La Feria, Riha had a conversation with Hurt Stuart, which took place in a cafe located in said city. Stuart testified as follows:

"Riha came over where I was drinking a cup of coffee and sat down and began to kid me about what kind of folks we were; why didn't we wake up and live; that we were away back, and kidding me about what kind of Mayor we had, and I asked him what he was talking about and he said, 'Your Mayor is in an insurance racket and we are going to have him in the penitentiary in a few days', and he went on in detail about he had all the necessary evidence, and called over all those other parties named in the paper. I knew all those parties and he went through the details about what it said in the paper, and about how he was going to have him in the penitentiary in a few days, and kidded me a whole lot. I was quite interested because Mr. Moore was Mayor of the town, and I had known Riha about as long as I had Mr. Moore, and knew his reputation.

"Q. You said he mentioned these names in the paper. One here is Guadalupe G. Gonzales. Was there any discussion about that or any of these other names? Tell the Court what was said about each one. A. Well, this Guadalupe woman here and her husband is one of the first Mexicans I knew when I came to the Valley. They lived right back of my house, and this woman is the woman he accused of collecting insurance off of some one when they wasn't dead.

"Q. That is, he accused Guadalupe Gonzales? A. Yes sir; I believe so, and Asa Moore was coaching the affair; that he was head of the works.

"Q. He was coaching her on how to collect? A. He and this Pauncho Garcia, how to collect the insurance.

"Q. Did he say those Mexicans had taken money or insurance policies when the party named in the policy was not dead? A. Yes, sir, through the supervision of Asa Moore.

"Q. Now, Mr. Stuart, did you hear Riha make those charges against Mr.

268

Moore one time or many times? A. Well, I was in there every morning along about that time, and still go in there every morning, and the best I remember Riha was there something in the neighborhood of a week—four, six or seven days, and a lot of times he was in this place, and on two or three occasions or maybe more, he made special attempts to inform me all about this affair, which wasn't any of my business, and I was not interested."

The fact that Riha was directed by appellant to make an investigation of the so-called "insurance racket" being operated in and about La Feria, Texas, is, of course, an important circumstance in connection with the determination of the question at hand. However, this fact or circumstance is not in itself sufficient to support the implied finding of the trial court, as it can not be said that all slanderous statements which may have been made by Riha in and about La Feria were uttered in the course of his employment, simply because he was sent there to conduct an investigation. Southwestern Telegraph & Telephone Company v. Long, Tex.Civ.App., 183 S.W. 421.

A corporation can be held liable for a defamation by its agent only in the event of its being shown that "such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty." Great Atlantic & Pacific Tea Company v. Harris, Tex.Civ.App., 75 S.W.2d 974, 976.

In Swift & Co. v. Gray, 9 Cir., 101 F.2d 976, 981, it was held that liability for the utterance of slanderous statements may be attributed to the employer if such statements may be "classed as something done in attempting to do what the master has employed or directed the servant to do."

Can it be said that the testimony of Stuart relating to his conversation with Riha, taken in connection with the fact of Riha's employment as an investigator, is sufficient to support an inference that Riha was attempting to do what the insurance company had employed him to do; namely, procure information concerning alleged fraudulent claims against the insurance company?

Recognizing the rather wide latitude conferred upon the trier of fact issues, we must hold that the inference has support in the testimony. This even though we might be of the opinion that the evidence preponderates in favor of the view that Riha's statements were prompted by individual or personal motives having no connection with his employment, and that he was actuated by a desire to give information rather than to obtain it. Ginsberg v. International Shoe Co., Tex.Civ.App., 299 S.W. 695; Chapman v. First Nat. Bank, Tex.Civ.App., 275 S.W. 498; 3 Tex.Jur. 1102, § 771.

It appears from Stuart's testimony that he was well acquainted with Guadalupe Gonzales, one of the suspects, that she and her husband lived right back of his house, and, further, that Riha on two of these occasions and maybe more attempted to talk to Stuart about the affair. These circumstances tend to support the theory that Riha had precipitated and pursued the conversations with Stuart in an attempt to elicit information—that he was attempting to do what he had been employed to do.

The conversation with Riha detailed by the witness Holley will not, in our opinion, support an inference that it was conducted in the course of his employment. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. We need not detail this conversation in view of our holding above set out, which necessitates an affirmance of the judgment of the trial court.

Judgment affirmed.