TEXAS PLASTICS, Inc., and Fred J. Meyer, Appellants,

v.

ROTO-LITH, Ltd., and Harry Borak, Appellees.

No. 16434.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1958.

Fred B. Wagner, Brownsville, Tex., Allen Wood, Corpus Christi, Tex., R. Dean Moorhead, Austin, Tex., Cox, Wagner, Adams & Wilson, Brownsville, Tex., Fischer, Wood, Burney & Nesbitt, Corpus Chrisi, Tex., Looney, Clark & Moorhead, Austin, Tex., for appellants.

James C. Abbott, William E. York, McAllen, Tex., Ewers, Cox & Toothaker, McAllen, Tex., of counsel, for appellees.

Before TUTTLE, JONES and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment following a jury verdict in a slander suit. The jury returned a verdict against the defendants Meyer and his employer, Texas Plastics, Inc., for $25,000 damages and $50,000 exemplary damages. The trial court denied defendants' motion for new trial on condition that plaintiffs agree to a remittitur of $25,000 on the exemplary damage part of the verdict. This was agreed to, and defendants appealed from the judgment as finally entered against them for $50,000.

The grounds of appeal fall generally into two categories. The first group of contentions relate to the form of the verdict, and its effect on the judgment of the court. The second group goes to the merits of the case. They deal with the Texas law of slander and its application to the facts proven below.

### The Form of Verdict

The suit was brought by Harry Borak and Roto-Lith, Ltd., a corporation of which he was president, against Fred Meyer and Texas Plastics, Inc. The Court charged the jury, without objection from the defendants:

"Now for that reason, I have worded a form of verdict which you may or may not use, as it may suit your convenience; first, in the event of a verdict for the plaintiffs, 'We, the jury, find for the plaintiff, Roto-Lith, Ltd., and against the defendants, for blank damages.' I mean there the nominal or actual damages that you may see fit to award. Now the second section, 'We further find for the plaintiffs and against the defendant Texas Plastics, Inc., and/or Fred J. Meyer, exemplary damages in the sum of blank dollars.' If you determine that exemplary damages should be awarded, then you will determine whether or not they should be awarded solely against the man making the statement or against Texas Plastics or against both, and you can strike out 'and/or' and strike out either one of those names, just whatever you find. I am just simply trying to assist you. The third form of verdict is in the event of a verdict for the defendants, 'We, the jury, find for the defendants.'"

The jury entered its verdict on the form prepared by the trial judge.[1]

The defendants made no request to have the form of the jury's verdict clarified, but in a motion for new trial they asserted that the verdict for the plaintiff (the word "plaintiff" being in the singular) constituted a finding in favor of Roto-Lith, Ltd. only; that such verdict therefore would not support the judgment for actual damages in favor of both plaintiffs; that since exemplary damages cannot be awarded except where there is a finding of actual damages,[2] and it being apparent that part

1. This form, as completed by the jury, is here duplicated:

> "Verdict of the Jury.
> "Filed May 26, 1956.
> "We, the jury, find for the plaintiff, Roto-Lith, Ltd., and against the defendants for $25,000.00 damages.
> "We further find for the plaintiffs and against the defendant, Texas Plastics,

Inc. and/or Fred J. Meyer, exemplary damages in the sum of $50,000.00.
> "Hubert K. Porter,
> "Foreman.
> "or
> "We, the jury, find for the defendants.
> ".............,
> "Foreman."

2. For this proposition appellants cite 13 Tex.Jur. 378.

of the award of exemplary damages was intended to be for Borak, for whom no actual damages were awarded, the verdict was deficient because of this patent error.

By their motion for a new trial defendants also contended that the finding of exemplary damages in favor of the plaintiffs and against "Texas Plastics, Inc. and/or Fred J. Meyer" is too indefinite and uncertain, because of the use of the words "and/or", to support a judgment.

■ Upon overruling the defendants' motion for new trial, the trial court entered a judgment in favor of both plaintiffs and against both defendants for the sum of $50,000, there having been filed a remittitur of $25,000 of the exemplary damages.[3] The trial court thus construed the jury's verdict "We, the jury, find for the plaintiff, Roto-Lith, Ltd., and against the defendants for $25,000.00 damages" as a verdict for the plaintiffs, Borak and Roto-Lith, Ltd. In light of the charge to the jury quoted above, we have no doubt as to the correctness of this action by the trial court. The court had specifically stated to the jury that if they found a verdict for both the plaintiffs they could use the written form prepared by the court, which in words provided: "We, the jury, find for the plaintiff, Roto-Lith, Ltd." In the absence of any objection by the defendants that there was an inconsistency in this form of verdict and in view of the fact that there was never any issue in the case which would have made a recovery for Borak stand on any different basis from a recovery for Roto-Lith, Ltd., we see no reason why the jury's verdict should not be taken to mean exactly what the trial court said it did mean when he submitted the form to them for their action. We therefore hold that the verdict of the jury was properly construed by the court to constitute a joint verdict in favor of the plaintiffs against the defendants.

■ This conclusion answers the next contention of appellants. The fact that the jury found both plaintiffs entitled to actual damages for the defendants' tort supports the verdict for both of them for exemplary damages which was returned by the jury. Defendants will not now be heard to complain that a separate finding in favor of each plaintiff was necessary. If it had desired such a finding it had ample opportunity to object to the court's charge at the time the case was submitted to the jury. Moreover any failure to differentiate between plaintiffs is not harmful to the defendants, since the judgment against them can be wholly satisfied by the payment to them jointly as in the form of the judgment.

■ Finally, appellants make much over the use by the jury of the words "and/or" in their verdict. This expression was authorized by the court in its charge. It also was made without objection and also without a request of counsel, after the verdict, for a clarification. The only question then is whether the trial judge correctly interpreted the effect of the jury's verdict in finding, as to the exemplary damages, against Texas Plastics, Inc., and/or Fred J. Meyer. Clearly the court was right in determining that this verdict was nothing more or less than a joint verdict. It justified a judgment against one and the other, which if satisfied by one is satisfied as to

3. The final judgment is as follows:
    "Final Judgment.
        "Filed October 11, 1956.
    "This action having been tried and a general verdict for the Plaintiffs in the sum of $25,000.00 actual damages, together with $50,000.00 exemplary damages having been duly rendered on the 26th day of May, 1956, and the Plaintiffs having, in accordance with the order of the Court, filed a Remittitur of $25,000.-00 of the exemplary damages;

    "It is Adjudged that said Plaintiffs Roto-Lith, Ltd. and Harry Borak recover of the Defendants Texas Plastics, Inc. and Fred J. Meyer the sum of $50,000.-00, together with their costs, and that they have execution therefor.
    "Done at Corpus Christi, Texas this 10th day of October, 1956.
        "(S)  James V. Allred,
            "United States District Judge"

both, but if unsatisfied as to one, then can be collected in the alternative from the other.

We have heretofore considered in a criminal case the effect of a failure by a party to object to a court's charge in submitting the issues to a jury. Williams v. United States, 5 Cir., 238 F.2d 215. If an ambiguity in a jury's verdict is not to be the basis of reversal on appeal in a criminal case when it results from a charge of the court not excepted to, then clearly appellants in this civil case have waived any right to criticize the form of the jury's verdict which was a product of the court's instruction. See also Boice v. Bradley, D.C., 92 F.Supp. 750, 756, affirmed Bradley Min. Co. v. Bradley, 9 Cir., 194 F.2d 80, where the trial court said:

> "The jury was advised as to the limit it could go in assessing damages against the defendant. For the Court to say to a jury, this you can do, and then when the jury has acted say that it acted wrongly, discredits the Court if the Court on that ground set aside the verdict."

### Contentions on the Merits

■ On the merits of the case, the record discloses testimony from which the jury could find the following facts: After the plaintiffs had sold a substantial volume of polyethylene bags to one Vahlsing, apparently with complete satisfaction, the latter represented that he planned to make his own bags for use in his very extensive fruit and vegetable business in Texas; that at Vahlsing's request Borak permitted the defendant, Fred Meyer, to come in and inspect Roto-Lith's plant and learn all about the manufacturing of the bags; that thereafter Vahlsing organized Texas Plastics, Inc., of which Meyer was made General Manager. This company started manufacture of bags in competition with Roto-Lith. Meyer negotiated a contract with Lone Star Bag Company to sell Texas Plastics' bags throughout the Rio Grande Valley fruit and vegetable area of Texas. In conversations with salesmen of Lone Star, Meyer told them that they would run into competition who were "cheap-chisellers," telling them specifically about Roto-Lith, that they had short-counted the trade and telling one of them that Roto-Lith and Borak were "crooks"; that Vahlsing had sued Roto-Lith and recovered a substantial amount for short count. Meyer made the same statements to a customer, Boler, who testified that Meyer had told him "Harry Borak was a crook and a thief, or something of that sort." [4] When confronted by Borak with these statements Meyer admitted not only making them but admitted their falsity.[5] The making of these statements greatly affected Borak in that "I was

4. This testimony was as follows:
"* * * in the meantime, well, Fred Meyer told me that—about this experience that they had had with Roto-Lith Company, that they had been shorted, and he told me that Harry Borak was a crook and a thief, or something of that sort, that I would, he believed, be shorted on my count, and that maybe the weight too * * * frankly, I was nervous, I thought maybe I was going to get hung, so I put some—I hired some girls, girls that worked in my shed, and I had them to go count them, to be perfectly frank about it, and the bags were from ten to forty bags extra in every box I counted. I didn't find any boxes short, and I did continue to check them, because—we worked on a very small percentage of money, I mean a nickel or a dime a crate, that is about the kind of profit we make, so we can't afford to—we use from five to seven million bags a year; we can't afford to come up short or not get what we are paying for, so I have counted these bags a good many times, and up to now, I haven't found any shortage at all."

5. Part of the testimony as to Meyer's admission was as follows:
"A. I told Mr. Meyer that Mr. Boler had told me that he called me a crook. 'If you do business with Mr. Borak, his price may be a few pennies less, but in the end, it will cost you more. I have got the proof. It was me who got money back for Vahlsing from Roto-Lith because I proved that they were crooks. I had them fined. The Bureau of Weights and Measures fined them besides, and whatever you buy from them

sick about this. This whole thing had collapsed on me," particularly the refusal of Vahlsing, as president of Texas Plastics, to repudiate the stories. Borak and Roto-Lith were put in a difficult competitive position, requiring them to cut their prices. A corporate profit of $60,-000 for 1954 was followed by a loss of $71,000 in 1955, the year during which the statements by Meyer were allegedly made. Borak was personally hurt and upset by the spreading of these stories among potential customers, and he asked Vahlsing to retract them on behalf of Texas Plastics. Vahlsing declined to do so.[6] The demeanor of the defendant Meyer and the corporate defendant's president, Vahlsing, was unfriendly and arrogant in the extreme, this attitude bearing on the jury's determination as to the issues of credibility and malice.[7]

The parties do not greatly differ as to the legal rules applicable to the determination of the issues on the merits. Appellants place much reliance on Billington v. Houston Fire & Casualty Insur-

---

at, no matter what price, it will cost you more in the end because he will steal from you.'

\* \* \* \* \*

"Q. All right, then, what did you say to Mr. Meyer? A. Then Mr. Meyer said to me, 'Harry, it was stupid of me. I lied. I thought it would help me in my selling. I realize I made a mistake. I will never, never do it again, I promise you. It was the stupidest thing I have ever done, to lie the way I did.' He offered me his hand. I shook hands with him and said, 'Fred, I believe you. You will never say it again.' "

6. "A. \* \* \* I called Mr. Vahlsing Senior in Corpus Christi, at a hotel. I told Mr. Vahlsing that I had just come up from the Valley and I had heard the stories, I had dinner with Mr. Fred Meyer, that he had admitted it to me and apologized.

"Q. What were these—what was your exact conversation to Mr. Vahlsing? What did you tell him? A. That I had confronted Mr. Meyer with him telling Mr. Lutz, Mr. Boler and Mr. Benson that I had been fined by the Bureau of Weights and Measures, 'that you had to sue me to get a refund of money; that I was a crook, and if they did business with me, I would cheat them.'

"Q. And what did he say to you? A. He said, 'Well, I don't know.' I then told him that Mr. Lutz had given me an order for three million bags and I wanted to cancel them because Mr. Meyer had gone back to Mr. Lutz and again repeated these crooks and cheats and 'we had to fine him and I will prove it to you.'

"Q. When did Mr. Meyer go back to Mr. Lutz? Was this a subsequent conversation? A. After I had left the Valley, and had Mr. Meyer's promise that he wouldn't repeat it.

"Q. You told Mr. Vahlsing about this? A. I told Mr. Vahlsing about it, and

that Mr. Lutz was waiting for him to call him, that he wanted to cancel the order, and would he please do so, and now that it has gone further, that the whole story is throughout the whole Valley, and I would like him to print a retraction in the newspaper, that he never had to sue me, that I never cheated him, and he refused to do it.

"Q. And did he state why? A. He said something—he said to me, when I told him about printing a retraction, because I was being hurt so badly, the reason of why, he said, 'I don't retract anything. The Vahlsing—' no, 'The Vahlsing group doesn't retract anything.'

"Q. Was that the end of that conversation? A. That was the end of the conversation that day, he refused to retract, he refused to call, he refused to print anything, they don't do that."

7. In the order overruling the defendant's motion for new trial, the trial court made the comment:

"Plaintiffs' evidence, accepted by the jury, showing a course of vicious, malicious, slanderous false statements made by defendant, Meyer, General Manager of Texas Plastics, concerning plaintiffs after having accepted the run of plaintiffs' business establishment and securing information as to business methods before setting up in competition with plaintiffs. It shows a wanton adoption and approval of such slanders by Vahlsing, Sr., owner of Texas Plastics and against Vahlsing, Jr., his son. The cold record cannot disclose the arrogance, ruthlessness and vicious indifference to these wrongs by the Vahlsings. This attitude on their part probably accounts for the fact that the jury awarded $50,000 exemplary damages as against only $25,000 actual damage."

Elsewhere the court spoke of "Vahlsing Senior's snarling testimony" as to one point.

ance Co., Tex.Civ.App., 226 S.W.2d 494, as standing for the proposition that in Texas the law of slander is such that calling another "liar" and a "crook" is not actionable per se. The abstract rule is not disputed by appellees. But they point out properly, we think, that the rule stated in the Billington case is restricted to the use of such words without the allegations or proof of innuendo or circumstances from which a jury could find that the subject of these defamatory words was adversely affected in his occupation or profession. The Billington case itself makes clear the distinction, the court saying:

> " 'The general rule is that "oral words, however opprobrious, are not actionable without proof of special damage, unless they impute to another the commission of a crime." * * * *An exception, however, to the rule as well established, perhaps, as the rule itself, is that "words which affect a person injuriously in his office, profession, or occupation are actionable per se, though they are oral, regardless of the fact that they do not impute the commission of any crime." '* Mayo v. Goldman, 57 Tex.Civ.App. 475, 122 S.W. 449, 450." (Emphasis added.) Billington v. Houston Fire & Casualty Ins. Co., Tex.Civ.App., 226 S.W.2d 494, 496.

We think it quite clear that the testimony that Meyer had repeatedly stated that Boler was a *cheap chiseller* and *a crook in connection* with the statement that his company *had* and would short count and short weight customers, coupled with statements, technically false, that they had been sued for such short-change practices, was ample to justify a finding of slander under the Texas decisions. Mayo v. Goldman, 57 Tex.Civ. App. 475, 122 S.W. 449.

There is no dispute as to the availability of truth as a defense. This issue was fairly presented to the jury and was rejected by it. In its determination of this, as well as the other fact issues, the jury had the opportunity to test the credibility of the witnesses as they appeared on the witness stand. There is no appealable issue here.

On the defense of qualified privilege raised by appellants, this would go only to justify the otherwise slanderous statements made to the salesmen. The charge of the court as to this issue was certainly fair to the appellants. The court charged that "the statements made by Meyer to the salesmen were conditionally privileged and will not give rise to damages for slander even though the statements or part of them were untrue, unless Mr. Meyer, who was making the statement, made it with malice toward the person spoken about." In a proper case of conditional privilege, the parties concede this to be the law. Cranfill v. Hayden, 97 Tex. 544, 80 S.W. 609; Nunn v. Webster, Tex.Com.App., 260 S.W. 157. The fact that the jury could have found that Meyers' slanderous statements were made to the salesmen for the purpose of repeating them as a part of their selling technique may well have justified the submission to the jury of the question whether the conditional privilege existed rather than for the court to have ruled it as a matter of law, but this question is not before us for decision.

There was, of course, ample evidence of malice on the part of Meyer. In his alleged admission to Borak of having made the statement and that he "lied" and that such acts were the "stupidest thing I have ever done," together with the testimony of Boler that there was bad feeling between Meyer and Borak, together with Meyer's denial to his superior, Vahlsing, that he made the statement, reiterated on the witness stand, taken together were proof of a malicious basis for the statements rather than a good faith effort by Meyer to give privileged statements to his salesmen. This issue was also resolved against Meyer by the jury.

■ The next complaint of appellant, Texas Plastics, Inc., arises from its defense that it is not liable for slanderous statements made by Meyer. The argument is that Meyer was only an employee and that under Texas law a corporation is not liable for slander by its agents unless made by authorization or upon ratification of the corporation. For this proposition appellants cite Cyrus W. Scott Mfg. Co. v. Millis, Tex.Civ.App., 67 S.W. 2d 885. It seems clear, however, that the requirement that there be an authorization or ratification by the corporation can be met without any formal corporate action relating to the particular acts or words. This is made plain from the language used by the Texas court in Great Atlantic & Pacific Tea Co. v. Harris, Tex. Civ.App., 75 S.W.2d 974, where on page 976 the court said:

"The next contention is that, as a matter of law, the statement made by Grubbs was not made in the course of his employment, and that therefore no liability exists against his employer on account of its utterance. We overrule this contention. An action is sustainable against a corporation for defamation by its agent, if such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty. Neither *express* authorization nor subsequent ratification is necessary to establish liability." (Emphasis added.)

This language is quoted in Commercial Union Life Ins. Co. v. Moore, Tex.Civ. App., 160 S.W.2d 266, which case is relied on by appellants. A reading of this case, which is quoted at length in appellants' brief, shows that appellants misconstrued the holding of the Texas court. Instead of holding as stated in the brief, that the company in the Commercial Union Life Ins. Company case was not liable, the court held in fact that the statement by Riha, the employee, taken in connection with the fact of his employment as an investigator, was sufficient to support an inference that Riha was attempting to do what the insurance company had employed him to do, and was thus sufficient to support a finding of liability on the part of the insurance company.

■ We think it quite clear that under the Texas rule the evidence would authorize a finding by the jury that when Meyer made the defamatory statements to the salesmen of Lone Star Bag Company and Boler, the customer, he was, to paraphrase the language of the court in the Commercial Union case, "attempting to do what the * * * company had employed him to do"—that is to further the sales of the company's products. This result derives from the fact that although at places in his testimony Meyer stated that he was to have nothing to do with sales, the defendant corporation, in its answer, admitted that Meyer was the general manager of the company. Furthermore, it seems to us that this fact was conceded by defendants when their counsel, in cross examining one of the salesmen, put the following question: "And Mr. Meyer, as manager of Texas Plastics, came to Houston and had about a two or three day indoctrination meeting with the Lone Star Bag Company salesmen?" It seems hardly permissible for appellants to contend that Meyer was not carrying on his assigned duties in conducting this sales meeting when part of their defense is based on the contention that the communication to the salesmen was conditionally privileged because he was consulting with them as to the manner of conducting their sales campaign. Moreover, the testimony is clear that when the plaintiff Borak reported to Vahlsing, the president of the corporation, that Meyer had slandered him and his company, Vahlsing made no claim that Meyer was not engaged in carrying out his appropriate duties at the time of the statements. We think it clear that the issue of liability on the part of the corporation was thus clearly presented to

the jury, which resolved the issue in favor of the plaintiffs.

 There remains for consideration the contention of appellants that the proof was inadequate to support a verdict for actual damages, and the related contention that the court erred in the charge to the jury on this subject. The law in Texas is no different from the general law with respect to damages for slander per se. In such a case damages are presumed and need not be proved. Southwestern Telegraph & Telephone Co. v. Long, Tex.Civ.App., 183 S.W. 421. Here the jury could find words actionable per se and no proof of damages need be made under those circumstances. However, the fact that no proof was required does not prevent or make inadmissible the plaintiffs attempting to prove actual damages. This they sought to do here by showing that they were placed in a difficult competitive situation, and by showing a substantial reduction in net earnings following the defamatory statements. Defendants made no objection to the reception of such evidence and the court charged that this evidence could be considered. Defendants did not object to the charge on the ground that special damages had not been pleaded, but only on the ground that the proof was inadequate. Such a charge under these circumstances cannot be made the basis of a reversal of the judgment. If it was error to charge that lost profits could be recovered if the loss proximately resulted from the slander in the absence of a pleading to that effect, the error was waived by not being called to the court's attention at the trial, as required by Rule 51 of the Rules of Civil Procedure.[8]

We have carefully considered the other complaints as to the court's charge but find no error in them.

The judgment is affirmed.

8. "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects *and the grounds of his objection.*" (Emphasis added.) 28 U.S.C.A., F.R.C.P., Rule 51.