**Dennis COLLINS, Plaintiff,**

v.

**Sidney J. BROWN, Defendant.**

**Civ. A. No. 1674–64.**

United States District Court
District of Columbia.
May 24, 1967.

Ferdinand J. Mack, Washington, D. C., for plaintiff.

George E. C. Hayes and George H. Windsor, Washington, D. C., for defendant.

## OPINION

HOLTZOFF, District Judge.

In this action for slander the jury returned a verdict in favor of the plaintiff for $15,000 as compensatory dam-ages, and $30,000 as punitive damages. The case is now before the Court on the defendant's motion for a new trial. The principal point raised is that the award is excessive, particularly as to punitive damages.

The salient facts may be briefly summarized as follows. The plaintiff, Dennis Collins, is a member of the District of Columbia Bar in good standing and in active general practice. The defendant, Sidney J. Brown, is engaged in the real estate and building business, apparently on a large scale, and operates through a number of corporations that he controls. A business concern, known as United Cork Companies, which had a regional office in Baltimore, did some construction work for a corporation controlled by the defendant. United Cork Companies encountered a delay and difficulty in collecting the compensation due to it, amounting to $25,700. Accordingly, it directed the manager of its Baltimore office, George Bonhach, to retain counsel, in order to collect the indebtedness and especially to protect any lien that the company might have on the property as to which it had rendered services. Bonhach hired Henry Hartlove, a Baltimore lawyer, for that purpose. The latter in turn felt that he needed a correspondent in Washington, where the property was located and retained Dennis Collins, the plaintiff in this action, who had previously handled some other legal matters for him. After making an investigation, the plaintiff filed a mechanic's lien in behalf of United Cork Companies as against the property in question, naming in the notice of lien a number of individuals and corporations, among them the defendant Brown.

We now reach the defamatory statements that form the subject matter of this litigation. The defendant Brown telephoned to Bonhach, the manager of the Baltimore office of the United States Cork Companies, by long distance—it should be emphasized, not to its counsel —, and stated, among other things that he had had business with Dennis Collins in the past; that Dennis Collins had ob-

tained a fraudulent judgment against him in favor of a colored client in the amount of $14,000;[1] that Dennis Collins should be sued for malpractice; that Dennis Collins practised bigotry; that Collins took the case not because he was concerned about earning a fee, but only because he had a personal grudge against him, Brown; and that he, Brown, sent the matter to his attorney for a defamation suit against Dennis Collins for including his name in the mechanic's lien. Bonhach immediately communicated this conversation to Hartlove, the Baltimore counsel of the company. Hartlove promptly discharged Collins from the case and placed it in the hands of another Washington lawyer. The testimony shows that eventually, after considerable effort and much delay, a collection was made of a large part of the amount due the company, and that counsel, who had succeeded Collins, was paid a fee of over $6,000. The testimony also indicates that Collins has not received any further business from Hartlove.

That the statements made by the defendant to Bonhach are defamatory is not seriously disputed. A defense of truth was interposed, both in the pleadings and in the pretrial order, but no attempt to sustain this plea was made at the trial. The defendant also asserted qualified privilege. This Court overruled this contention as a matter of law.

■ Qualified privilege exists only in a situation in which there is a reasonable ground for making the alleged defamatory statement, either in the legitimate interest of the person uttering it, or of the person to whom it is communicated. For example, one who in regular course of business is asked by a prospective employer, or a potential creditor, for information concerning a person, is entitled to the defense of qualified privilege if his reply would otherwise be

regarded as defamatory. Another example is that of an agent who represents two or more principals. Communication of derogatory information concerning him by one of the principals to another, may well be within a qualified privilege, because each of the principals has a legitimate interest in being properly represented.

■ In this instance there was no reason for the defendant Brown to communicate with the manager of the regional office of the United Cork Companies and utter the slanderous statements over the telephone concerning the lawyer retained in behalf of the defendant's creditor. Such an action was entirely unjustified and highly reprehensible. A party to a legal proceeding has no legitimate interest that the law should consider in the choice made by his adversary of his own counsel. It follows hence that a defamatory statement concerning counsel for the opposing party is not privileged. A desire of a litigant that his opponent should be represented by a lawyer other than the one whom his opponent has selected, does not create an occasion for a qualified privilege for defaming the lawyer, or clothe such defamatory or derogatory statements with the cloak of privilege.

A classic definition of communications protected by a qualified privilege is found in the opinion of the Supreme Court in White v. Nicholls, 3 How. 266, 286–287, 11 L.Ed. 591. Its pertinent portions read as follows:

"1. Whenever the author and publisher of the alleged slander acted in the *bona fide* discharge of a public or private duty, legal or moral; or in the prosecution of his own rights or interests. For example, words spoken in confidence and friendship, as a caution; or a letter written confidentially to persons who employed A. as a

---

1. In Brown v. Coates, 102 U.S.App.D.C. 300, 253 F.2d 36, 67 A.L.R.2d 943, the Court of Appeals affirmed a judgment for the plaintiff in an action brought by one Coates against Sidney J. Brown, the defendant in the case at bar, for fraud

as a broker, in which compensatory damages in the sum of $7059 and punitive damages in the sum of $7500 were awarded. Dennis Collins, the plaintiff in the case at bar, was one of counsel for the plaintiff in that action.

solicitor, conveying charges injurious to his professional character in the management of certain concerns which they had intrusted to him, and in which the writer of the letter was also interested. 2. Anything said or written by a master in giving the character of a servant who has been in his employment. 3. Words used in the course of a legal or judicial proceeding, however hard they may bear upon the party of whom they are used."

This definition was followed and applied by the Court of Appeals for the District of Columbia in Bailey v. Holland, 7 App.D.C. 184, 190.

A more recent definition is found in Kroger Grocery & Baking Co. v. Yount, 8th Cir., 66 F.2d 700, 702, 92 A.L.R. 1166:

"A communication made in good faith by any person in the discharge of his duty, either legal or moral, is qualifiedly privileged and actionable only on proof of actual malice."

As heretofore stated, a desire that one's adversary discharge his attorney and retain some other member of the bar, may be wishful thinking, but is not such an interest as the law protects. Consequently, this Court held that there was no basis on which to predicate the defense of qualified privilege in this case.

■ The principal question to be considered on the present motion for a new trial is the amount of damages, i. e. compensatory damages in the sum of $15,000 and punitive damages in the sum of $30,000. This Court is of the opinion that the amount of compensatory damages awarded by the jury is entirely fair and reasonable. As a result of the defendant's unpardonable slanderous statements, the plaintiff lost a desirable item of business from which he would have derived a fee of between $5,000 and $6,000. No further business has been forthcoming to him from the same source, although he had received prior retainers from it. He suffered humiliation and obviously sustained mental anguish for the time being. Considering all these elements, the award of $15,000 as compensatory damages is within the bounds of reason and in fact is not particularly liberal.

■■ A more serious question arises in connection with the award of punitive damages in the sum of $30,000. Such damages are allowed as punishment. Both the question whether punitive damages should be awarded at all as well as their amount are matters within the sound discretion of the jury. Such discretion, however, is not unbridled or unlimited and is subject to revision or control on the part of the trial judge if its results exceed the bounds of reason.

■■ The purpose of punishment, be it a criminal sentence, a civil penalty, or punitive damages, is not to inflict suffering or to impose a loss on the offender. Its object is to act as a deterrent: first to discourage the offender himself from repeating his transgression; and, second, to deter others from doing likewise. When punitive damages are awarded, they must indeed be large enough to act as an effective deterrent. They should not be any larger.

■ The traditional power of a Federal judge to set aside the verdict of a jury and to grant a new trial, which constitutes an essential feature of the common law system of trial by jury, was ably summarized by Judge Parker of the Fourth Circuit in Virginian Ry. Co. v. Armentrout, 166 F.2d 400, 408, 4 A.L. R.2d 1064:

"The power and duty of the trial judge to set aside the verdict under such circumstances [i. e. where the damages awarded by the jury are excessive] is well established, the exercise of the power being regarded as not in derogation of the right of trial by jury but one of the historic safeguards of that right."

The power of the Federal trial judge to set aside a verdict and grant a new trial was discussed in detail by this Court in United States v. Robinson, 71 F.Supp. 9.

There are numerous cases in which trial courts have required a reduction of punitive damages awarded by the jury in defamation cases. Without any attempt at even approaching an exhaustion of the authorities, a few illustrative decisions may be cited.

In Texas Plastics, Inc. v. Roto-Lith, Ltd., 5th Cir., 250 F.2d 844, in which a slanderous statement was repeated to numerous persons that a corporation, its officials and employees were cheating customers, the jury awarded compensatory damages in the sum of $35,000 and punitive damages in the sum of $50,000. The award of punitive damages was reduced by the trial judge from $50,000 to $25,000. The judgment was affirmed by the Court of Appeals.

In Moyle v. Franz, 267 App.Div. 423, 46 N.Y.S.2d 667, a libel suit was brought against the publishers of a periodical published by Jehovah's Witnesses, known as "The Watchtower". The jury awarded compensatory damages in the sum of $5,000 and punitive damages amounting to $10,000. The appellate court ordered a reduction of the total verdict from $15,000 to $7,500. The Court of Appeals affirmed the order of the Appellate Division, 293 N.Y. 842, 59 N.E.2d 437.

In Toomey v. Farley, 286 App.Div. 1084, 147 N.Y.S.2d 672, the plaintiffs were charged in a political campaign document with being Communists. An award of $10,000 as compensatory damages and $7,500 as punitive damages was reduced by the Appellate Division to $5,000 as compensatory damages and $5,000 as punitive damages. The Court of Appeals affirmed the order of the Appellate Division, 2 N.Y.2d 71, 156 N.Y.S.2d 840, 138 N.E.2d 221.

In Erlich v. Etner, 224 Cal.App.2d 69, 36 Cal.Rptr. 256, an award of $75,000 as compensatory damages and $50,000 as

punitive damages was reduced by the trial court to $30,000 as compensatory damages, and $5,000 as punitive damages. On appeal a new trial was ordered on another ground.

There are indeed cases in which juries have awarded verdicts for huge amounts in libel cases and the awards were not disturbed. Such an outcome has occurred where a grave and vicious libel was circulated on the radio, television, or newspapers on a nationwide basis. Such a case was Reynolds v. Pegler, D.C., 123 F.Supp. 36, affirmed 2 Cir., 223 F.2d 429.

■ The instant case is not in that category. Here the defamatory statement, while malevolent and harmful, was communicated to only one individual, who in turn transmitted it to one other person. It did not receive a wide circulation. The extent of the dissemination of the defamatory statement is an important factor to be considered in determining the amount of punitive damages.[2]

■ The Court is of the opinion that, as stated heretofore, the amount of $15,000 awarded as compensatory damages is fair and reasonable. It should stand. The Court is further of the opinion that the sum of $30,000 awarded as punitive damages is excessive and that any amount exceeding $10,000 would be questionable and subject to revision. The Court concludes that the amount of punitive damages should be reduced to $10,000.

Accordingly the defendant's motion for a new trial will be granted unless the plaintiff within 10 days stipulates to a remittitur of $20,000 in respect to punitive damages, thereby reducing them to $10,000. The result would be an award of $15,000 as compensatory damages and $10,000 as punitive damages, which the Court regards as fair and reasonable.

2. In justice to Dennis Collins, the plaintiff in this action, it should be recorded that several members of the local bar, including the President of the District of Columbia Bar Association, were called as witnesses in his behalf, and testified that his professional reputation was excellent. They also indicated that it has not been damaged by the defendant's slander.