Floyd E. McDOWELL, Plaintiff-
Appellant,

v.

The STATE OF TEXAS, Texas Board of
Mental Health and Mental Retarda-
tion, et al., Defendants-Appellees.

No. 30363.

United States Court of Appeals,
Fifth Circuit.

May 6, 1971.

On Rehearing En Banc Aug. 29, 1972.

David R. Richards, Clinton & Richards, Austin, Tex., for plaintiff-appellant.

David Rubin, Richard J. Medalie, Epstein, Friedman & Duncan, Washington, D. C., for amicus curiae Nat'l Educ. Ass'n.

Crawford C. Martin, Atty. Gen. of Texas, Jack Sparks, Asst. Atty. Gen., Austin, Tex., Jack B. Manning, Houston, Tex., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., J. C. Davis, Asst. Atty. Gen., Austin, Tex., for defendants-appellees; Bean & Manning, Houston, Tex., of counsel.

Before SKELTON*, Judge, and MORGAN and CLARK, Circuit Judges.

* Honorable Byron G. Skelton, U. S. Court of Claims, sitting by designation.

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation. of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

CLARK, Circuit Judge:

Dr. Floyd E. McDowell filed this action, based upon 42 U.S.C.A. § 1983 (1970).[1] Jurisdiction was allegedly based upon 28 U.S.C.A. § 1343(3) (1962).[2] The defendants were the State of Texas, the Texas Board of Mental Health and Mental Retardation (Board), and certain Board officials. Plaintiff alleged that he was denied substantive and procedural due process by virtue of his discharge from the position of Superintendent of the Richmond State School, an institution operated by the Board. In addition to the asserted federal claim, McDowell sued two Board officials and a private party, David Sloane, under a pendent State claim of slander. At the conclusion of McDowell's evidence, the district court granted motions by all defendants for directed verdicts against McDowell on both the federal and State counts. McDowell appeals, contending he established his claims as a matter of law or, in the alternative, presented sufficient evidence to create jury issues.

Dr. McDowell, who enjoys a substantial national reputation in the field of mental health and mental retardation, was employed by the Board as Superintendent in 1966. Approximately 22 months later he was discharged summarily for reasons never made altogether certain. The Board said his discharge eventuated from generally unsatisfactory services. In the trial court it particularized 11 specific grounds for his discharge in its answer. In general, the Board now contends that Dr. McDowell's discharge resulted from inefficiency, in-

2. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

* * * * *

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

competency and insubordination. The Board further contends that because Dr. McDowell had no tenure or contractual term of employment, they were at liberty to terminate his services with or without cause at will under applicable Texas law.[3] Despite the present specifications and despite admitted advice given to Dr. McDowell at the time of his discharge that he was being dismissed for cursing his superiors, Dr. McDowell asserts that the real reason for his discharge was his refusal to follow orders of his superior, Dr. Charles Barnett, the Deputy Commissioner, to admit the mongoloid son of a State senator. Dr. McDowell contends that the admission of this child would have been contrary to Texas law[4] and the established program of the Richmond State School. Dr. McDowell requested a hearing before the Board at which he could contest his discharge, and even offered to bear the cost of such a procedure, but this request was denied.

### SLANDER

There is no dispute in the evidence that Sloane reported to Board officials that Dr. McDowell had imputed a canine status to the mothers of both the Commissioner and Deputy Commissioner of the Board at a public meeting. Dr. McDowell offered proof that Sloane's report that he had spoken these words was false. Both the Commissioner and the Deputy Commissioner were charged with giving this statement currency at a meeting of the Board without investigation or authentication. The slander charges against these Board officers have been dropped and only the charge against Sloane is pressed on this appeal.

■■ Dr. McDowell admitted during oral argument before this court that the decision to fire him had already been made when Sloane tendered his report to the Commissioner and the deputy. Sloane argues from this admission that since Dr. McDowell could have suffered no damages by reason of Sloane's utterances, the words are not actionable. This argument would have validity if Sloane's statements were not slanderous per se. However, when statements are shown to be slanderous per se, it is unnecessary for a plaintiff to plead and prove special damages. Bell Publishing Co. v. Garrett Engineering Co., 141 Tex. 51, 170 S.W.2d 197 (1943); Buck v. Savage, 323 S.W.2d 363 (Tex.Civ.App.—Houston, 1959, writ ref'd n. r. e.); Texas Plastics, Inc. v. Roto-Lith, Limited, 250 F.2d 844 (5th Cir. 1958). Utterances are slanderous per se if they are false, made without privilege and ascribe to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful profession or office. Restatement of Torts, § 573 (1938); Bell Publishing Co. v. Garrett Engineering Co., supra; Mayo v. Goldman, 57 Tex.Civ. App. 475, 122 S.W. 449 (1909); Texas Plastics v. Roto-Lith, supra. It would appear that Sloane's description of Dr. McDowell's verbal conduct would fall into this category since the description tended to lower Dr. McDowell's professional reputation and to affect the financial gains he received from his profession. See Restatement of Torts, supra, Comment b at page 178.

■■ But even assuming arguendo that Sloane's statements were slanderous per se, we have determined from the record that they were qualifiedly privileged. A qualified privilege attaches to statements which occur under circumstances wherein any one of several per-

---

3. Tex.Rev.Civ.Stat.Ann. Art. 691 (1964).

4. Tex.Rev.Civ.Ann. Art. 3871b § 10 (1966), provides in pertinent part:
   "In determining the order in which eligible persons are admitted to its available facilities the Board shall consider the following factors: (1) the relative need of the person for special training, education, supervision, treat-
   ment, care or control; (2) the impact of the person upon the community; and (3) the ability of the person's family to assimilate him effectively into family life. * * *"
   Dr. McDowell also refers us to Tex. Rev.Civ.Stat. Art. 6252–9 § 3(c) (1970), which proscribes special favors to legislators.

sons having a common interest in a particular subject matter may reasonably believe that facts exist which another, sharing that common interest, is entitled to know. Restatement of Torts, *supra*, at § 596; Perry Bros. Variety Stores, Inc. v. Layton, 119 Tex. 130, 25 S.W.2d 310 (Tex.Comm'n App.1930, opinion adopted); Gulf Construction Co. v. George E. Mott Const. Co., 442 S.W.2d 778 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ); Buck v. Savage, *supra*. Sloane was Executive Director of the Texas Association for Retarded Children, Inc., an eleemosynary group whose purpose is to foster the treatment, care and rehabilitation of retarded children. His statements were made to executive personnel of the Board, whose official duties were to act in furtherance of the purpose of Sloane's charitable group. Thus, both parties to the communication had a common interest in mentally retarded children and a common interest in the harmony and competency of the staff employed by the Board to work with such children. Obviously these parties shared a vital common interest in any act of openly voiced antipathy within the staff.

Dr. McDowell could have shown that the protection accorded by this qualified privilege was unavailable had he been able to prove malice toward him on the part of Sloane, Gulf Construction Co. v. George E. Mott Const. Co., *supra;* Buck v. Savage, *supra;* however the record is barren of any such evidence. Thus the district judge was correct in directing a verdict in favor of the defendant Sloane on the slander count.

## SUBSTANTIVE DUE PROCESS

Dr. McDowell argues that the child Dr. Barnett ordered him to admit to the Richmond School was not eligible for admittance under State law [5] or school policy. The defendants dispute this contention, but for purposes of our review of the directed verdict on the substantive due process ground, we accept as correct Dr. McDowell's claims that the admittance would have been improper and that the pressures brought to bear on him to admit this child were due solely to the vagaries and vicissitudes of Texas politics, and thus credit Dr. McDowell's claim that his discharge eventuated from an invalid order.

This raises the question neatly. Under the facts we assume to be true, was a federal statutory or Constitutional right involved when a State Board fired a State employee contrary to State law for local political considerations? Insofar as substantive due process is concerned, our answer is no.

Before detailing the reasoning which leads us to this conclusion, it is appropriate to expressly note what is *not* involved in the case at bar. There is no claim that Dr. McDowell has been denied First Amendment rights, nor that he has suffered any deprivation on account of race or color, nor that any explicit federal Constitutional or statutory prohibition has been transgressed. Dr. McDowell makes no assertion that just State forums are not readily available to him and capable of affording complete relief. Moreover, the uncontradicted evidence demonstrates that, rather than the actions of the defendant depriving him of the means of livelihood, within 11 days after his discharge by the Board Dr. McDowell had received 20 job offers and accepted one of these jobs offers at a higher salary than he was receiving when he was fired.

The termination of Dr. McDowell's status as a State employee rests solely on a claim that his employers violated State statutes and local policies in effecting his termination. The right to employment by a State, in itself, is not a right secured by the Constitution or by the Laws of the United States; thus, even an invalid or an improper discharge from such an office, unaccompanied by some more precise claim of *federal right* than a general claim of lack of due

---

5. *See n. 4, supra.* As can be seen, the statute is framed in the most subjective of terms.

**1346**

process,[6] is not the sort of deprivation of a right, privilege or immunity which is secured by the Constitution of the United States or an Act of Congress providing for equal rights of citizens within the meaning of 28 U.S.C.A. § 1343(3). *Cf.* Johnson v. Hood, 430 F.2d 610 (5th Cir. 1970). Cases of this genre constitute uniquely State causes of action. As such they are peculiarly within the realm of State courts. "A right to have state (or city) laws obeyed is a state, not a federal right." Love v. Navarro, 262 F. Supp. 520 (D.C.Cal.1967). "Mere violation of a State statute does not infringe the federal Constitution." Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L. Ed. 497 (1944); *cf.* Gentry v. Howard, 288 F.Supp. 495 (E.D.Tenn.1968). Even though it is patent that the amorphous and protean contours of substantive due process under the Fourteenth Amendment extend to all citizens in all sorts of conditions and circumstances, it is equally axiomatic that federal jurisdiction under § 1343(3) and 42 U.S.C.A. § 1983 cannot be extended to that purely local squabble by the mere invocation of the generalized protection which these words of the amendment confer.

The Constitution's deeply embedded concepts of federalism demand that we refuse a procedure of statutory construction that would put such a literal gloss on the words of §§ 1343 and 1983 as would kill the spirit the founding fathers quickened when the people of the sovereign states ceded sufficient governmental power to form a sovereign union. National Woodwork Manufacturers Ass'n v. N. L. R. B., 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). If we were to distort §§ 1343 and 1983 to vest federal courts with jurisdiction over the uniquely local substantive matters which this case presents, we would not only impair our ability to consider the vast array of cases that properly belong in federal forums but, as surely as sunrise, we create yet another and an unnecessary interference with orderly State processes.

Only if a false vanity duped us into supposing that the quality of justice in the federal court system is somehow superior to that dispensed by the State, could we justify such an incursion into intrastate affairs. To the contrary, State courts are best equipped to determine the meaning and the scope of State statutes and local policies and to determine whether State officials encroached upon Dr. McDowell's rights of due process which are fully preserved in Texas courts by the Texas and the federal Constitution. *Cf.* Hill v. City of El Paso, Texas, 437 F.2d 352 (5th Cir. 1971). This is the basic premise for federal deference to State decisional processes in Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) and Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970).

More recently the Court expressed these fundamental concepts on which we here depend in these words:

"* * * 'comity' * * * [between the State and federal court systems involves] a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

This is not to say that the directed verdict is supportable on any theory of abstention or exhaustion. It would not be. Moreno v. Henckel, 431 F.2d 1299 (5th Cir. 1970), makes it clear that §§ 1983 and 1343 make the federal remedy they afford *supplementary* to any State judicial or administrative processes. What we hold penetrates the tissue of the issue raised to the structure of the right itself. In *Moreno* we pointed out: "The questions in this case are *all* federal questions." We know now that the reverse was so in Dr. McDowell's

---

6. A right also guaranteed by the Texas Constitution, Art. I § 19.

case. He raised and proved purely State issues that never did belong in the district court. When sufficient fact development occurred to make that clear, that court did not err in directing verdicts for the defendants on the substantive due process claim.

## PROCEDURAL DUE PROCESS

Dr. McDowell urges that he was denied procedural due process by the State's failure to accord him a hearing on his discharge and that this failure constitutes a separate ground for federal jurisdiction. Specifically, Dr. McDowell seeks to place himself within the scope of Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970), wherein we held that a college professor with expectancy of re-employment must be accorded a hearing at which reasons for his discharge were established by the State. The record is devoid, however, of any evidence that Dr. McDowell had such an expectancy of re-employment. There was no definite commitment by the State to any particular term for his services. Further, the defendants made no representations to Dr. McDowell that would reasonably lead him to believe that he could expect to remain employed for any particular period of time. Finally, we note that Texas law expressly vests the Board "with full authority and discretion to terminate the employment of any such superintendent at any time."[7] Thus, the lack of any expectancy of continued employment on the part of Dr. McDowell distinguishes *Ferguson*.

However, in Sindermann v. Perry, 430 F.2d 939 (5th Cir. 1970) we held that a State employed teacher *without* expectancy of reemployment, had to be accorded minimal procedural due process if he challenged his discharge. If such a State employee, who contractually can be discharged at any time and without cause assigned, wishes to assert that his discharge is only nominally an exercise of contractual prerogatives and in reality constitutes an invasion of a specific constitutional right (in that case the right to petition the legislature for redress of grievances), that employee may give reasonable notice of his claim to the State agency by which he was discharged. When such a notice is served, the employee is, under the federal Constitution, entitled to a hearing at which he must be afforded a reasonable opportunity to prove his assertions. *See* 430 F.2d at 944. In dictum, this same principle was applied to the discharge of a city policeman who asserted the true basis of his dismissal was a denial of freedom of association. Battle v. Mulholland, 439 F.2d 321 (5th Cir. 1971). *See also* Fluker v. Alabama State Board of Education, 441 F.2d 201 (5th Cir. 1971). This federal right to a hearing which comports with minimal due process does not belong to school teachers alone, nor does it extend only to those who found their claim upon a federal substantive right. It has been accorded to students attending a State college, Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961); to county high school students, Williams v. Dade County School Bd., 441 F.2d 299 (5th Cir. 1970); to a doctor seeking admission to the staff of a county hospital, Sosa v. Board of Managers of Val Verde Memorial Hosp., 437 F.2d 173 (5th Cir. 1971); to persons whose names are posted in retail liquor outlets as given to excessive drinking, Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); and to welfare recipients whose benefits are terminated. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Thus, our determination that Dr. McDowell was not denied federal substantive due process does not control our determination with regard to whether he possessed a federal procedural right. Since he charged that the Board really cloaked a wrong under Texas law in the garb of a contractual dismissal, the question turns upon whether Dr. McDowell had a right to have those federal Constitutional procedures defined in the other

---

7. Tex.Rev.Civ.Stat.Ann. Art. 691 (1964).

situations mentioned above applied in judging the validity of his termination. In other terms, did he have a right to a hearing before some impartial official with a meaningful opportunity to try to establish his contentions and confront his detractors? We hold not.

Under the circumstances of this case, no federal Constitutional right to a trial type hearing existed. In Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), the Supreme Court held federal Constitutional due process did not require such a hearing in every conceivable case of governmental impairment of private interests. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. [Citing cases] Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. It is compounded of history, reason, the past course of decisions * * * [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the governmental function involved, as well as of the private interest that has been affected by governmental action. Where it has been possible to characterize that private interest as a mere privilege subject to the Executive's plenary power, it has traditionally been held that notice and hearing are not constitutionally required." 367 U.S. at 895, 81 S.Ct. at 1748.

Here, as in *McElroy,* the State government was involved with the dispatch of its own internal affairs. It was a case in which governmental employment could be revoked at the will of the appointing officer. There was no issue of discrimination on the grounds of race or religion; no badge of disloyalty or infamy which foreclosed other employment opportunities, was here present. Accepting all he says as so, Dr. McDowell and his superiors simply heard "a different drummer"—the Deputy Commissioner, responding to Texas politics, demanded the admission of a particular child, while Dr. McDowell, responding to Texas law, refused the demand.

While a State government does not have the same freedom of action enjoyed by a private employer, no one could seriously doubt that a State may choose to employ personnel without imbuing them with job tenure or civil service type rights of job continuity. This court, under the guise of enforcing procedural due process, could not require a State to assume the financial burden inherent in giving every employee who voluntarily assumed a position of employment terminable at the will of the employing authorities, the right to provoke a hearing when he wishes to challenge his discharge. We have no prerogative to dictate the contractual terms of State employment. A fortiori, we cannot vary those conditions the parties deliberately assumed for themselves.

■ Again, as in the portion of this opinion dealing with substantive due process, it is important to note that we are dealing only with an averment and proof which claimed that State officials acted contrary to State statutes in terminating a temporary employment arrangement. Unlike Dr. Ferguson, Dr. McDowell had no expectancy of reemployment. Unlike Sindermann or Battle, he asserted no deprivation of specific Constitutional rights. Unlike Dixon, Williams, Dr. Sosa or Kelly, he was not excluded from a group having a right or privilege extended or conferred to others similarly situated—the State had and would have the prerogative of discharging or replacing Dr. McDowell whenever it suited their pleasure. Unlike Constantineau, he was not branded as disloyal or infamous—he readily obtained numerous offers of other employment in his field.

In balancing his private interests and the precise nature of the governmental function involved in the over-all realities of this situation, we conclude his position was analogous to the worker fired by McElroy and that Dr. McDowell had no

federal Constitutional right to a trial-type hearing.

The decision of the district court is Affirmed.

Before JOHN R. BROWN, Chief Judge, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLD-BERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

PER CURIAM:

Subsequent to en banc briefing, argument and reconsideration of this cause, the Supreme Court decided Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which review and distill the rules of procedural due process in State employment termination situations. These decisions make it clear that the opinion of the panel was correct and it is adopted as the opinion of the court en banc.

JOHN R. BROWN, Chief Judge, with whom WISDOM, GOLDBERG and SIMPSON, Circuit Judges, join specially concurring:

While I concur in the decision reached here on the basis of the Supreme Court's opinion in Perry v. Sindermann, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, I wish to underscore heavily and indelibly what was said in the companion case of Board of Regents v. Roth, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 regarding the circumstances under which the termination of public employment without notice or hearing would constitute a "deprivation of liberty" proscribed by the due process clause of the Fourteenth Amendment:

The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality.

Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515; Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 219, 97 L.Ed. 216; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817; United States v. Lovett, 328 U.S. 303, 316–317, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252; Peters v. Hobby, 349 U.S. 331, 352, 75 S.Ct. 790, 801, 99 L.Ed. 1129 (concurring opinion). See Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230. In such a case, due process would accord an opportunity to refute the charge before University officials.[12] In the present case, however, there is no suggestion whatever that the respondent's interest in his "good name, reputation, honor or integrity" is at stake.

12. The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons.

Considered in the abstract the press release issued by the Texas Board of Mental Health and Mental Retardation, stating that Dr. McDowell's discharge was "in the best interest of the children of the Richmond State School and the retarded of the Gulf Coast area," may have some close to the sort of officially sanctioned innuendo which the Supreme Court had in mind. However, in view of the fact that Dr. McDowell received approximately twenty offers of employment within eleven days after being fired, one of which he accepted at a higher salary than he had previously earned, I cannot conclude on the basis of the facts revealed by this record that he has demonstrated the denial of a right protected by the due process clause. Inso-

far as the Court holds that the mere *fact* of termination is insufficient to establish the requisite "deprivation of liberty," I agree. But it is now crystal-clear that when the proof shows that the denial or termination of public employment has been accomplished in a manner adversely affecting an individual's "good name, reputation, honor or integrity," some reasonable opportunity for a response must be provided. Whatever prerogatives a State may enjoy as an employer, unrestrained character assassination is not one of them.